**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X
TRUSTEES OF THE BUILDING TRADES
EDUCATIONAL BENEFIT FUND, THE BUILDING
TRADES ANNUITY BENEFIT FUND, BUILDING
TRADES WELFARE BENEFIT FUND, and
BUILDING TRADES PENSION FUND,

                           Plaintiffs,

             -against-

JAMES PETRY and JEANETTE PETRY, individually,

                         Defendants.
-----------------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

CV 20-4617 (RPK)(ARL)

**LINDSAY, Magistrate Judge:**

      Plaintiffs, Trustees of the Building Trades Educational Benefit Fund, the Building Trades Annuity Benefit Fund, Building Trades Welfare Benefit Fund, and Building Trades Pension Fund (collectively, "Plaintiffs" or the "Funds") commenced this action against defendants James Petry and Jeanette Petry (collectively the "Individual Defendants") for violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1145 and § 1132(a), *et seq.* ("ERISA") and the Labor Management Relations Act of 1947, 29 U.S.C. § 185. Defendants have not answered or moved with respect to the complaint. On June 9, 2021, Plaintiffs moved for entry of a default judgment against Individual Defendants. By Order dated June 9, 2021, Judge Kovner referred Plaintiffs' motion for default judgment to this Court to determine whether the pending motion should be granted and to determine the appropriate amount of damages, costs, and/or fees, if any, to be awarded upon such determination. Based upon the information submitted by Plaintiffs, and for the reasons set forth below, the Court respectfully recommends that Plaintiffs' motion for a default judgment be granted and Plaintiffs be awarded:

$1,339,981.55 in unpaid contributions; (2) $86,917.47 in interest on the total amount of unpaid contributions; (3) $267,996.31 in liquidated damages; (4) $3,077.75 in attorneys' fees and costs.

## BACKGROUND

**I.  Factual Background**

The following facts are taken from the complaint as well as the motion for default judgment and the exhibits attached to the motion.  Additionally, the Court has reviewed the filings in *Trs. of the Bldg. Trades Educ. Ben. Fund v. Culver Elec*., No. 17-3448 (the "Company Action"), which it can judicially notice.[1]

In the Company Action, Plaintiffs filed a complaint against Culver Electric LLC ("Culver") seeking to recover unpaid fringe benefit contributions owed by Culver pursuant to Culver's collective bargaining agreement ("CBA") with the United Electrical Workers of America Local 363 IUIJAT ("Union").  Culver was alleged to be an employer within the meaning of 29 U.S.C. § 1002(5). Company Action, Compl. ¶ 8.

By Report and Recommendation dated November 3, 2020, Judge Tiscione recommended that the Court find that Culver was liable for a violation of Section 515 of ERISA for failure to make timely contributions to the Funds and recommended damages be awarded in the sum of $1,621,553.93.  Company Action, ECF No. 31.  On November 24, 2020, Judge Hurley adopted the Report and Recommendation insofar as it recommended granting a default judgment on liability and denied that portion of the motion for a default judgment as to damages without prejudice to Plaintiffs making a renewed motion.  Plaintiffs filed a renewed motion on December

---

[1] *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.,* 146 F.3d 66, 70 (2d Cir. 1998) ("A court may take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings") (quoting *Liberty Mutual Ins. Co. v. Rotches Pork Packers, Inc*., 969 F.2d 1384, 1388 (2d Cir. 1992)); *Veg-Mix, Inc. v. U.S. Dept. of Agriculture*, 832 F.2d 601, 607, 266 U.S. App. D.C. 1 (D.C. Cir. 1987) ("Courts may take judicial notice of official court records . . . .") (citing *Freshman v. Atkins*, 269 U.S. 121, 123-24, 46 S. Ct. 41, 70 L. Ed. 193 (1925); *In re Aughenbaugh*, 125 F.2d 887, 890 (3d Cir. 1942)).

10, 2020, which was also referred to Judge Tiscione. In a subsequent Report and Recommendation, Judge Tiscione recommended that "Trustees be awarded $1,339,981.55 in unpaid contributions, $86,917.47 in interest on unpaid contributions, $267,996.31 in liquidated damages, $4,934.83 in audit fees, $2,600 in attorney's fees, and $477.75 in costs, for a total damage award of $1,702,907.91." Company Action, ECF No. 39. Judge Hurley adopted the Report and Recommendation on May 12, 2021.

     The same plaintiffs now bring this against James and Jeanette Petry, seeking to recover the same unpaid fringe benefits. According to the Complaint, the CBA requires Culver to make contributions to the Funds on behalf of its workers who perform work covered by the CBAs found due and owing; and submit contribution reports setting forth the hours that each employees worked and the amount of contributions due pursuant to the rate schedules set forth in the CBA. Compl. ¶ 16. The CBA provides that in the event of the Employer's failure to pay contributions and they become due, the employer is obligated to the pay the following: the additional amount of twenty (20%) percent of the total sum of contributions due and unpaid as liquidated damages; interest; attorneys' fees at the hourly rate charged to the Funds for such services and all costs incurred in initiating the court action for the collection of delinquent contributions. *Id*. at ¶ 21. Plaintiffs allege that the Individual Defendants breached the agreements by failing to remit the required contributions to the Funds.

     In addition to describing the relationship between Culver and the Funds, Plaintiffs allege, upon information and belief,[2] that "the Defendant, James Petry is/or was an officer, agent, partner and/or principal owner of the Culver, and is personally and individually obligated to

---

[2] All of Plaintiffs' allegations with respect to the Individual Defendants are made upon information and belief.

3

assume all obligations of Culver." *Id.* at ¶ 11.  James Petry is alleged to have "owned, controlled and dominated the affairs of Culver Electric LLC and carried on the business of Culver for his own personal ends." *Id.* at ¶ 28.  Further, Plaintiffs allege that "James Petry had managerial discretion and control over Culver and made all decisions on behalf of Culver; signed contracts governing Culver; signed checks for Culver and made all decisions concerning payments by Culver." *Id.* at ¶ 29.  Plaintiffs also allege that "James Petry determined which creditors Culver would pay; determined when the Plaintiffs' Funds would be paid; determined how much money would be paid to the Plaintiffs' Funds and exercised control over money due and owing to the Plaintiffs' Funds," *id.* at ¶ 30, and that he "commingled assets of the Plaintiffs' Funds with the Culver's general assets and used the Plaintiffs' Funds' assets to pay other creditors of the Culver rather than forwarding the assets to the Plaintiffs' Funds." *Id.* at ¶ 31.  It is Plaintiffs' position that "[b]y failing and refusing to turn over to the Plaintiffs' Funds the contributions, which are property of the Funds, Culver and James Petry have converted the property of the Funds." *Id.* at ¶ 32.  Finally, Plaintiffs allege that "while retaining Plaintiffs' Funds' contributions, James Petry diverted the Plaintiffs' Funds' assets for his own personal use." *Id.* at ¶ 33.

   Plaintiffs also allege "Defendant, Jeanette Petry is/or was an officer, agent, partner and/or principal owner of the Culver Electric LLC, and, is personally and individually obligated to assume all obligations of Culver Electric LLC." *Id*. at ¶ 13.  The Complaint contains identical conclusory allegations with respect to Jeanette Petry as those set forth above with respect to defendant James Petry.  *See, e.g., id.* at ¶¶ 53-58.  Indeed, Plaintiffs failed to change the pronouns when repeating, verbatim, the allegations.  *See, e.g., id.* at ¶¶ 53, 54, 58.

   Based upon these allegations, Plaintiffs assert claims against both Individual

4

Defendants for breach of their fiduciary duty arising from the failure to remit the required contributions to the Funds.

## II. Procedural Background

Plaintiffs filed the complaint in this action on September 29, 2020. ECF No. 1. The summons and complaint were served on the Individual Defendants on September 30, 2020. ECF Nos. 6 & 7. Defendants never answered or otherwise responded to the Complaint. On April 27, 2021, Plaintiffs filed a request for a certificate of default with the Clerk of Court. ECF No. 8. The Clerk of Court issued the certificate of default on April 30, 2021. ECF No. 9.

On June 9, 2021, Plaintiffs filed a motion for a default judgment. ECF No. 10. By Order dated June 9, 2021, Judge Kovner referred Plaintiffs' motion to the undersigned. Defendants have not opposed the motion for default judgment or responded in any way.

## DISCUSSION

## I. Legal Standard Governing Default Judgments

Federal Rule of Civil Procedure 55 establishes a two-step process regarding default judgments. First, the Clerk of the Court enters the party's default. Then, as here, a motion for a default judgment is made to the district court judge. A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) ("[A]ll well-pleaded factual allegations in the plaintiff's complaint pertaining to liability are deemed true"). However, even if a plaintiff's claims are deemed admitted, a plaintiff must still demonstrate that the allegations set forth in the complaint state valid claims. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d

5

Cir. 2011) (suggesting that "a district court is 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law'" prior to entering default judgment) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)) (alterations omitted).

In addition, in the context of a motion for default judgment, conclusory allegations cannot establish that the defaulting party is liable as a matter of law. *See E.A. Sween Co., Inc. v. A&M Deli Express Inc.*, 787 F. App'x 780, 782 (2d Cir. 2019) (summary order) ("A defaulting party admits only well-pleaded factual allegations; it does not admit conclusory allegations or legal conclusions."). "Conclusory allegations based on information and belief" are generally insufficient to support a finding of default-based liability. *J&J Sports Prods., Inc. v. Daley*, No. 06-CV-0238, 2007 U.S. Dist. LEXIS 49839, 2007 WL 7135707, at *3-4 (E.D.N.Y. Feb. 15, 2007). However, allegations on information and belief may be sufficient to hold a defendant individually liable on a default judgment where such allegations state facts primarily within the defendant's knowledge. *See Joe Hand Promotions, Inc. v. Blais*, No. 11 Civ. 1214, 2013 U.S. Dist. LEXIS 142427, 2013 WL 5447391, at *3 (E.D.N.Y. Sept. 10, 2013) (deeming admitted allegations pled on information and belief in default judgment context) (*citing Fong v. United States,* 300 F.2d 400, 409 (9th Cir. 1962) (finding allegations on information and belief sufficient to hold defendant individually liable on default judgment because they stated facts primarily within defendant's knowledge)); *see also Sexy Hair Concepts, LLC v. Sexy Hair Inc.*, No. 12 Civ. 3937, 2013 U.S. Dist. LEXIS 142361, 2013 WL 5460629, at *4 (E.D.N.Y. Sept. 30, 2013) (deeming admitted allegation on information and belief that defendant owned corporate entity and directed and controlled the activity of the business in default judgment context).

A default also "effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws

6

upon which a claim is based and caused injuries as alleged." *Cablevision Sys. New York City Corp. v. Lokshin*, 980 F. Supp. 107, 111 (E.D.N.Y. 1997). With respect to damages, the movant need only prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound*, 973 F.2d at 159.

**II.     Liability**

Accepting the allegations in the Complaint as true, Plaintiffs have asserted valid claims under ERISA. ERISA requires employers to pay fringe benefit contributions pursuant to a valid collective bargaining agreement. 29 U.SC. § 1145. Specifically, the statute states that

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

Here, Plaintiffs have asserted that Culver entered into a CBA with the Union and failed to remit benefit contributions owed under the CBA. Thus, as recognized in the action against Culver, Plaintiffs have sufficiently set forth the elements of a claim for unpaid contributions and accompanying liability under ERISA against Culver.

However, in this action, Plaintiffs seek to hold James and Jeanette Petry personally liable for the unpaid contributions owed by Culver. As a general matter, a corporate employer does not have a fiduciary obligation to make trust fund contributions; rather that obligation is contractual. *Sasso v. Cervoni,* 985 F.2d 49, 51 (2d Cir. 1993) (citing 29 U.S.C. § 1002(21)(A)); *see also Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo*, 35 F.3d 29, 33 (2d Cir. 1994); *Flanagan v. T.R. Whitney Inc*., CV 19-0415 (JS) (AKT), 2020 U.S. Dist. LEXIS 158461 (E.D.N.Y. Aug. 26, 2020) (citation omitted). Thus, absent special circumstances, an individual

7

owner or officer "is not liable for corporate ERISA obligations solely by virtue of his role as officer, shareholder, or manager." *Sasso,* 985 F.2d at 50; *see also Trustees of the United Plant v. C.P. Perma Paving Constr., Inc.*, No. 15-CV-1171, 2016 U.S. Dist. LEXIS 30053, 2016 WL 1029507, at *2 (E.D.N.Y. Mar. 9, 2016) ("Absent 'special circumstances,' individual officers are not personally liable for unpaid benefit contributions that should have been made by corporations under ERISA.") (quoting *Solomon v. R. Mignon & Sons, Inc.*, No. 94-CV-1344, 1994 U.S. Dist. LEXIS 14024, 1994 WL 538617, at *2 (S.D.N.Y. Oct. 3, 1994)). Generally, a director or officer "is not personally liable for is corporation's contractual breaches unless he assumed personal liability, acted in bad faith or committed a tort in connection with the performance of the contract." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1177 (2d Cir. 1993). Plaintiffs have not alleged any special circumstances which would allow the Individual Defendants to be held personally liable for the debts of Culver.

However, "Section 409 of ERISA, 29 U.S.C. § 1109, provides an independent basis for [defendant's] liability in his individual capacity as a 'fiduciary.'" *Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 188 (2d Cir. 2015). "To establish the personal liability of a fiduciary, a plaintiff must show 'both that (1) the unpaid contributions were plan assets and (2) [the defendant] exercised a level of control over those assets sufficient to make him [or her] a fiduciary.'" *Bricklayers Ins. & Welfare Fund v. Job Opportunities for Women, Inc.*, No. 16-CV-6935 (PKC)(JO), 2019 U.S. Dist. LEXIS 13220, 2019 WL 343243, at *3 (E.D.N.Y. Jan. 28, 2019) (quoting *In re Halpin*, 566 F.3d 286, 289 (2d Cir. 2009)).

Plaintiffs argue that the unpaid contributions were plan assets because "[o]n April 28, 2015, the Trustees amended the Funds' Agreement and Declarations of Trust documents to

8

include language that contributions become vested plan assets when they become due." Pl. Mem. at 4. According to Plaintiffs, the applicable collective bargaining agreement, Article 25 at A.3, page 14, states:

> "Employer contributions become vested plan assets at the time they become due and owing to the above-referenced Fund. All contributions from an Employer shall, after their due date and until payment in full by the Employer to the Funds, be deemed to constitute plan assets of a trust fund in the possession of such Employer.

*See* Alimenia Aff. Exhibit E and G. Thus, the trust agreement makes clear that, beginning in 2015 the unpaid contributions are assets of the plan. *See Bricklayers Ins. & Welfare Fund v. FJW, Inc.,* No. 15-CV-887 (SJ) (SMG), 2016 U.S. Dist. LEXIS 111889, 2016 WL 4691293, at *3 (E.D.N.Y. Aug. 19, 2016) (citing 29 C.F.R. § 2510.3-102(a)), adopted by 2016 U.S. Dist. LEXIS 120667, 2016 WL 4688857 (E.D.N.Y. Sept. 7, 2016) ("Amounts withheld from wages by an employer for contributions to a vacation or pension fund are plan assets of an ERISA employee welfare fund").

Next the Court must consider whether the Individual Defendants exercised a sufficient level of control over the unpaid contributions to make them fiduciaries. "Congress intended ERISA's definition of fiduciary to be broadly construed." *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997). "ERISA's definition of a fiduciary is 'functional,' and, as relevant here, focuses on whether a defendant 'exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets' or 'has any discretionary authority or discretionary responsibility in the administration of such plan.'" *Bricklayers Ins. & Welfare Fund v. Alpha Omega Bldg. Corp.*, No. 19-cv-2600 (ERK) (RLM), 2021 U.S. Dist. LEXIS 163963, 2021 WL 3861762 (E.D.N.Y. Aug. 30, 2021) (quoting 29 U.S.C. § 1002(21)(A)(i), (iii)). A defendant is

9

not a fiduciary merely because he served as an officer of a company employing union members. *Romanowicz*, 577 F.3d at 86 (citing *LoPresti*, 126 F.3d at 40); *Sullivan v. M.A.C. Design Corp.*, 14-CV-1846 (NGG) (VVP), 2015 U.S. Dist. LEXIS 124465, 2015 WL 5518456, at *3 (E.D.N.Y. Sept. 17, 2015) ("Fiduciary status derives from an individual's actions in connection with an employee benefits plan, and not merely from the position he holds within a company"). "Nor is it sufficient that a defendant was authorized to sign company checks and was generally aware that benefit plans were supposed to be funded through employee deductions." *Alpha Omega Bldg. Corp.*, 2021 U.S. Dist. LEXIS 163963, at *9;[3] *see also Romanowicz*, 577 F.3d at 86-87 (finding defendant "was simply an officer of [the company]" where "he signed checks on the company's behalf, and . . . maintained plan assets," but did not "select investments[,] exchange one instrument for another[,] . . . was [not] responsibl[e] for determining which of the company's creditors would be paid or in what order, . . . or otherwise enjoy[ed] authority or control over the management of [the] Plan assets"); *Trs. of Plumbers Local Union No. 1 v. Dan Yant, Inc.*, No. CV 06-0173 (SJ)(JO), 2007 U.S. Dist. LEXIS 99436, at *12 (E.D.N.Y. Sept. 24, 2007) (declining to impose individual liability on corporate principle that signed the CBA because "a corporate officer or other agent who 'signs an agreement on behalf of a disclosed principal' is 'not individually bound to the terms of the agreement 'unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal")

---

[3] In *Alpha Omega*, the Court found the individual was a fiduciary because "sole owners who are also corporate presidents are fiduciaries under the functional test because 'it is apparent that only he could decide when to make contributions to the benefit funds, and how much to contribute.'" *Id.* (quoting *Sheet Metal Workers' Nat'l Pension Fund v. Vardaris Tech, Inc.*, 13-CV-5286 (ARR), 2015 U.S. Dist. LEXIS 144803, 2015 WL 6449420, at *6 (E.D.N.Y. Oct. 23, 2015)).

Here, in the Complaint, Plaintiffs offer unsupported legal conclusions and allegations made upon information and belief to demonstrate that the Individual Defendants exercised a level of control over the assets sufficient to make him or her a fiduciary. *See, e.g.*, ¶¶ 28-33, 53-58. The Court need not accept conclusory allegations of control, entirely unsupported by a factual basis. *See Unite Here Ret. Fund v. Edward Vill. Grp.*, LLC, 21-cv-2141 (LJL), 2021 U.S. Dist. LEXIS 220361, 2021 WL 5279405 (S.D.N.Y. Nov. 12, 2021) (refusing to enter default judgment because "Plaintiffs have alleged no facts regarding Defendants' ownership that would establish that the two belong to a 'control group' under the applicable statutes, nor have they pointed to any information incorporated into the Complaint that supports the conclusory allegations"); *Division 1181 Amalgamated Transit Union-N.Y. Emps.' Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 618-19 (E.D.N.Y. 2017) (declining to enter default judgment against alleged controlling party because "even in the context of a default judgment, it is the plaintiff's burden to demonstrate that the uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action").

In addition to the allegations set forth in the Complaint, in an affidavit in support of Plaintiffs' motion for entry of default judgment, Albert Alimenia states "[t]he Defendant, Jeanette Petry, . . . executed the Collective Bargaining Agreements as President of Culver, with United Electrical Workers of America Local 363, IUIJAT via an Assumption Agreement and their membership in the Building Industry Electrical Contract Association. James Petry . . . had represented himself as the President of Transit Operations for Culver and as an officer/representative of Culver through his signing of Culver checks made payable to the Funds." Alimenia Aff. at ¶ 2. As discussed above, the signing of checks on behalf of the corporate entity is insufficient to demonstrate that the individual is a fiduciary. *See, e.g.*,

11

*Romanowicz*, 577 F.3d at 86-87; *Alpha Omega Bldg. Corp.*, 2021 U.S. Dist. LEXIS 163963, at *9; *Bd of Trustees of United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 Annuity, Pension, Summer Benefit, Winter Benefit, & Welfare Funds v. J. Murphy Roofing & Sheet Metal, Inc.*, No. 13-cv-3807, 2015 U.S. Dist. LEXIS 125161, 2015 WL 5536598, at *6 (E.D.N.Y. July 6, 2015).  Most notably absent from Plaintiffs allegations are facts indicating the percentage of ownership of either defendant.  Nevertheless, a person who exercises authority and control over funds by deciding which bills and creditors to pay and when to do so is likely a fiduciary in terms of ERISA.  *LoPresti*, 126 F.3d at 40-41.  Plaintiffs allege that "James Petry determined which creditors Culver would pay; determined when the Plaintiffs' Funds would be paid; determined how much money would be paid to the Plaintiffs' Funds and exercised control over money due and owing to the Plaintiffs' Funds," *id.* at ¶ 30, and that he "commingled assets of the Plaintiffs' Funds with the Culver's general assets and used the Plaintiffs' Funds' assets to pay other creditors of the Culver rather than forwarding the assets to the Plaintiffs' Funds." *Id.* at ¶ 31.  The same allegations are repeated with respect to Jeanette Petry.  Despite being made upon information and belief for purposes of a default, these allegations are deemed admitted for purposes of the instant motion.  *See Fong*, 300 F.2d at 409; *Trs. v. J.& A. Contrs. Corp.*, No. 20 CV 1189 (ARR)(LB), 2021 U.S. Dist. LEXIS 208743 (E.D.N.Y. Oct. 28, 2021); *Blais*, 2013 U.S. Dist. LEXIS 142427, 2013 WL 5447391, at *3; *Sexy Hair Concepts*, 2013 U.S. Dist. LEXIS 142361, 2013 WL 5460629, at *4. Thus, Plaintiff has sufficiently set forth the elements of a claim against the Individual Defendants for unpaid fringe benefit contributions and accompanying liability under 29 U.S.C. Section 1145. Accordingly, the undersigned respectfully recommends that the Court grant Plaintiffs' motion for a default judgment as to the Individual Defendants' liability.

### III. Damages

ERISA provides a right of recovery to plaintiffs who have established liability under Section 515 for unpaid contributions, interest, liquidated damages, reasonable attorneys' fees and costs, and such other legal and equitable relief as the court may deem appropriate. 29 U.S.C. § 1132(g)(2). In support of their request for an award of damages, Plaintiffs have submitted the following documents: (1) Affirmation Danielle M. Carney of Barnes, Iaccarino & Shepherd, LLP counsel to Plaintiffs dated June 8, 2021; (2) Affidavit of Alan Rossi, auditor for Costa Rothbort CPAs LLC ("Costa") dated June 7, 2021; (3) Affidavit of Albert Alimena, Fund Manager of the Funds dated June 7, 2021 and (4) a Memorandum of Law dated June 8, 2021. The Court will determine damages based on the documentary evidence.

#### A. Unpaid Contributions

ERISA section 502(g)(2)(A), 29 U.S.C. § 1132(g)(2)(A), provides for an award of unpaid contributions by Defendant. The Trust Agreement does as well. Plaintiffs request unpaid contributions in the amount of $1,339,981.55 based in part upon an audit, and in part upon an estimate of unpaid contributions. Alimenia Aff. at ¶¶ 4-6; Rossi Aff. at ¶ 4-7, 10-11.

In support of Plaintiffs request for unpaid contributions, Plaintiffs submit an audit for the period September 1, 2013 through December 31, 2017 performed by Alan Rossi, an auditor as Costa which provides services for the Funds, attached as Exhibit A to his Affidavit. This document reflects that $286,937.40 in unpaid contributions is due and owing with respect to the Audit. Accordingly, the undersigned respectfully recommends that Plaintiffs be awarded $51,182.75 in delinquent contributions.

For the period January 1, 2018 through December 31, 2019, Plaintiffs provide an estimate of unpaid contributions amounting to $1,099,406.50. *Id*. at ¶ 10. According to Rossi, "The

13

estimated amount of $1,099,406.50 was derived from taking the greatest number of hours for which the employer was required to contribute in any month during the immediately preceding twelve (12) consecutive month period for, in their case, both Private rate and Prevailing rate hours, then multiplying those amounts by 24, the equivalent of the two year estimated period, and then adding 10% on top of that amount. The greatest number of Private hours in one month during the preceding twelve (12) months was 386 hours, with an average benefit package of $8.655, and the greatest number of Prevailing hours in one month during the preceding twelve (12) months was 911.5 hours, with an average benefit package of $42.215. Attached hereto as Exhibit C is the Collection Policy (See page 3 paragraph 9 which permits the estimating of delinquent contributions)". Rossi Aff. ¶¶ 10-11. The amount due was then reduced by payments made by Culver in December 2018 and January 2019 of $23,256.80 and $23,105.60 respectively. *Id*. Based on the evidence submitted, the Court agrees that the unpaid contributions for the relevant time period amount to $1,339,981.55.

## B. Interest on Unpaid Contributions

ERISA section 502(g)(2)(B), 29 U.S.C. § 1132(g)(2)(B), mandates an award of interest on unpaid contributions. The statute provides that "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26 [the Internal Revenue Code of 1986.]" 29 U.S.C. § 1132(g)(2). Here, pursuant to the CBA's collection policy, interest on the delinquent contributions accrues "beginning on the Contribution Due Date" and is calculated "at the prime rate as stated in the Federal Reserve Statistical Release . . . and applicable on the Contribution Due Date plus two percent (2%)." Rossi Aff., Ex. C at 2. Interest is calculated "from the Contribution Due Date, per month, until the date paid." *Id*. In the Rossi Affidavit, this formula is applied to calculate the

14

interest due on payments owed from the audit period and from the period of January 1, 2018 to December 31, 2019. *See* Rossi Aff. ¶¶ 12-13.  According to the chart prepared by the Auditors the Individual Defendants owe $15,884.72 in interest on unpaid contributions from the audit period.  *Id*. at ¶ 12. In addition, the Individual Defendants owe $71,032.47 in interest on estimated unpaid contributions for the period of January 1, 2018 to December 31, 2019.  *Id*.  at ¶ 13.  The Court has endeavored to check the numbers as set forth in the Rossi Affidavit. Although our calculations to not correspond exactly to the interest calculations provided by Plaintiffs, to be consistent with the recommendation of Judge Tiscione in the Company Action, and given the Individual Defendants default, the Court will accept the calculations provided by Plaintiffs.   Accordingly, the Court recommends that Plaintiffs be awarded the interest requested.

      **C.**     **Liquidated Damages on Unpaid Contributions**

ERISA section 502(g)(2)(C), 29 U.S.C. § 1132(g)(2)(C) and the CBA allow for an award of statutory damages equal to the greater of interest on unpaid contributions or liquidated damages provided for in the plan not to exceed 20% of the unpaid contributions.  Here, based on the unpaid contributions determined to be due and owing pursuant to the audit through December 2017 and the estimation of amounts due between January 2018 and December 2019, the Funds are entitled to liquidated damages in the amount of $267,996.31, which is equal to 20% of the unpaid contributions, and greater than the interest on the unpaid contributions.  Accordingly, the undersigned respectfully recommends that Plaintiffs be awarded $267,996.31 in liquidated damages on unpaid contributions.

      **G.**     **Attorneys' Fees and Costs**

Section 502(g)(2) of ERISA mandates awarding reasonable attorneys' fees and costs in ERISA matters brought by fiduciaries to enforce the terms of the CBA.  29 U.S.C. §

1132(g)(2)(D). As a general matter, in determining appropriate attorneys' fees, the "starting point" for calculating a "'presumptively reasonable fee," is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee'.") (quoting *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). The Supreme Court held that "the lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. Ex rel. Winn.,* 559 U.S. 542, 551 (2010) (emphasis in original). "The lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable attorney's fee." *Id.* at 553 (citation omitted); *see Arbor Hill Concerned Citizens Neighborhood Assoc.*, 522 F.3d at 184, 190-91 (holding a court determines a "presumptively reasonable fee" by considering case specific factors in order to establish a reasonable hourly rate that a "reasonable, paying client would be willing to pay," and then multiplying that rate by the number of reasonable hours). This assessment is undertaken "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Assoc.*, 522 F.3d at 190. The reasonableness of hourly rates are guided by the market rate "[p]revailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984), and the relevant community is generally the "district in which the court sits," *Polk v. New York State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983). Moreover, "[t]he burden is on the

16

party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed," *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 291 (E.D.N.Y. 2012), and this Circuit requires contemporaneous billing records for each attorney, *see Scott v. City of New York,* 643 F.3d 56, 57 (2d Cir. 2011).  Finally, there is a "strong presumption" that the lodestar represents the appropriate award, though "enhancements may be awarded in rare and exceptional circumstances."  *Perdue,* 559 U.S. at 552.

In the present case, Plaintiffs retained the services of Barnes, Iaccarino & Shepherd, LLP. Barnes, Iaccarino & Shepherd, LLP billed the Funds for legal services totaling $2,600 and costs in the amount of $477.75 for the period May 2017 through June 2021.  To support Plaintiffs' request for attorneys' fees and costs, Plaintiffs submitted the Affirmation Danielle M. Carney of Barnes, Iaccarino & Shepherd, LLP, with contemporaneous billing records annexed to the affirmation.  *See* ECF No. 13, Ex. E.  This amount is based on ten and a half hours of work by Trustees' counsel, Danielle M. Carney, who bills at a rate of $200 per hour, plus a $500 fee for a demand letter.  *Id*

The Court finds that Plaintiffs' submission provides sufficient evidence to form the basis for an award of damages without a further hearing.  Plaintiffs seek reimbursement for legal services rendered by Danielle Carny, an attorney who has represented employee benefit plans for over twenty years, at the rates of $200 per hour.  ECF No. 17 ¶¶ 16-18.  Courts in this district have recently approved hourly fee rates in the range of $200 to $450 for partners, $100 to $300 for associates, and $70 to $100 for paralegal assistants.  *See Gesualdi v. East Bay Contracting Corp.*, No. CV 14-4429, 2015 WL 5562560, at *7 (E.D.N.Y. Sept. 4, 2015), *adopted by*, 2015 WL 5562688 (E.D.N.Y. Sept. 21, 2015).  These same courts have recognized, however, "the 'relative simplicity of ERISA default cases by consistently approving rates that are closer to the

17

lower end' of the typical ranges." *Id.* (quoting *Trs. of the Pavers & Road Builders Dist. Council v. JREM Constr. Corp.*, No. 12–CV–3877, 2013 WL 618738, at *9 (E.D.N.Y. Jan. 28, 2013), *Report and Recommendation Adopted By*, 2013 WL 623573 (E.D.N.Y. Feb.19, 2013)). Here, the rate sought is reasonable.

Having determined the reasonable hourly rates to be used in this case, the Court now turns to the reasonableness of the hours billed. "The number of hours counsel spends on an action will be determined unreasonable if found to be excessive, duplicative, or unnecessary." *Finkel v. Metro Sign & Maint. Corp.*, No. 09 CV 4416, 2010 WL 3940448, at *16 (E.D.N.Y. Aug. 12, 2010) (citing *Labrera v. Frank J. Batchelder Transp. LLC*, No. 08–CV–3387, 2009 WL 245021, at *4 (E.D.N.Y. Feb. 2, 2009)). Here, the record reflects that the attorneys and paralegals spent a total of 10.5 hours on this matter. Carney Aff., Ex. E. The time records submitted here describe what tasks were performed on behalf of Plaintiffs, the dates on which such tasks were performed, and the amount of time expended. Based on the foregoing, it is recommended that Plaintiffs be awarded $2,600 in fees.

Plaintiffs also seek costs in the amount of $477.75. *See Trs. of Local 7 Tile Industry Welfare Fund v. Amarko Marble & Granite Co.*, No. 13-CV-2779, 2014 WL 1622098, at *11 (E.D.N.Y. Apr. 22, 2014) ("Generally, reasonable costs may be recovered by the prevailing party in an ERISA action."). Plaintiffs have provided a breakdown in costs and the undersigned finds this amount reasonable. Accordingly, the undersigned respectfully recommends that Plaintiffs be awarded attorneys' fees and costs in the amount of $3077.74.

## OBJECTIONS

18

A copy of this Report and Recommendation is being electronically filed on the date below. Counsel for Plaintiffs shall serve a copy of this Report and Recommendation on the Individual Defendants upon receipt and shall file proof of service with the Court. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days of service. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
December __, 2021

_____/s/_____
ARLENE R. LINDSAY
United States Magistrate Judge